Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHANNON MARIE KEEGAN and JOHN DAVID KEEGAN, Individually and as Next Friends of their minor children S.A. KEEGAN, N. GENTRY, and S. GENTRY, Plaintiffs, | : : : | |
| v. | : | Civil Action No._____ |
| MICHAELA LINN; STATE OF MARYLAND; MARYLAND DEPARTMENT OF HUMAN SERVICES; CECIL COUNTY DEPARTMENT OF SOCIAL SERVICES; LT. JOSEPH COSTA; DET. MICHAEL O'DONNELL; DET. CARSON WHITE; CECIL COUNTY SHERIFF'S OFFICE; KRISTEN HAHN; JENNIFER HOKUF; CHRISTIANA CARE UNION HOSPITAL; CECIL COUNTY CHILD ADVOCACY CENTER; DAVID GENTRY; DANIELLE GENTRY; and JOHN/JANE DOES 1-10, Defendants. | : : : : : : : | **JURY TRIAL DEMANDED** |

:    :    :    :    :    :    :    :    :    :    :    :    :    :

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COME NOW SHANNON AND JOHN KEEGAN of Cecil County, Maryland, individually and as next friends of their minor children ("Plaintiffs"), by and through their attorneys Daniel L. Cox, The Cox Law Center, LLC, file this Complaint for Damages and Jury Trial Demand against MICHAELA LINN; STATE OF MARYLAND; MARYLAND DEPARTMENT OF HUMAN SERVICES; CECIL COUNTY DEPARTMENT OF SOCIAL SERVICES; LT. JOSEPH COSTA; DET. MICHAEL O'DONNELL; DET. CARSON WHITE; CECIL COUNTY SHERIFF'S OFFICE; KRISTEN HAHN; JENNIFER HOKUF; CHRISTIANA CARE UNION HOSPITAL; CECIL COUNTY CHILD ADVOCACY CENTER; DAVID GENTRY; DANIELLE GENTRY; and JOHN/JANE DOES 1-10, ("Defendants"), and allege as follows:

1

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

**INTRODUCTION**

1. Plaintiffs Shannon Marie Keegan ("Mrs. Keegan") and John David Keegan ("Mr. Keegan") ("Plaintiffs") bring this civil rights action for damages under Maryland law arising from a coordinated course of conduct that resulted in unlawful investigation, unlawful search and seizure, unlawful arrests, prolonged pretrial detention, malicious prosecution, and interference with custody and family relations, and severe emotional, reputational, and economic harm.

2. Plaintiffs allege that Defendants, acting individually and in concert and under color of State authority, knowingly advanced false allegations of child abuse and neglect, ignored or concealed exculpatory information, and used the power of their offices to obtain warrants, criminal charges, and detention orders without probable cause.

3. Plaintiffs allege that Defendants' conduct violated the Maryland Declaration of Rights, including Article 24 (due process and fundamental fairness) and Article 26 (freedom from unreasonable searches and seizures), and constitutes actionable Maryland constitutional torts and common-law torts.

4. Plaintiffs further allege, on information and belief, that private Defendants David Gentry and Danielle Gentry, knowingly or recklessly made and repeated false accusations, used protective-order and custody-related processes for improper purposes, and intentionally interfered with Plaintiffs' custody and visitation rights and family relationships through wrongful conduct.

5. After a jury trial held January 17–24, 2024, Plaintiffs were acquitted of all criminal charges on January 24, 2024. The related juvenile CINA petition was dismissed on October 24, 2023 (Case No. C-07-JV-23-000074), and the Department later voluntarily overturned all "indicated" findings on November 7, 2024.

**PARTIES**

5. Plaintiffs are adult residents of the State of Maryland and reside in Cecil County, Maryland.

6. Plaintiffs bring this action individually and as next friends of their minor children, including S. Keegan, N. Gentry and S. Gentry.

7. Defendant State of Maryland is the sovereign State responsible for the acts and omissions of State personnel as provided by the Maryland Tort Claims Act ("MTCA"), subject to its terms and conditions.

8. Defendant Maryland Department of Human Services ("MDHS") is a State agency that oversees local departments of social services, including child protective services functions relevant to the events described herein.

9. Defendant Cecil County Department of Social Services ("Cecil DSS") is a local department of social services operating under the authority of MDHS and the State of Maryland and was responsible for child protective services actions described herein.

10. Defendant Cecil County Sheriff's Office is the law-enforcement agency whose deputies, supervisors, and detectives investigated Plaintiffs and participated in warrants, arrests, searches, and related actions alleged herein.

11. Defendant Lt. Joseph Costa is a CCSO supervisory officer who, upon information and belief, directed investigative actions, personnel assignments, and execution of warrants and arrests relating to Plaintiffs.

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

12. Defendant Detective Michael O'Donnell is a CCSO detective who was assigned to the investigation of allegations concerning Plaintiffs and who prepared, approved, and/or relied upon investigative materials and charging statements as described below.

13. Defendant Detective Carson White is a CCSO detective who participated in the investigation, communications with Cecil DSS personnel, and execution of investigative steps described below.

14. Defendant Michaela Linn is a Cecil County Department of Social Services Child Protective Services Assessor who acted as the primary investigator and reporting official in matters involving Plaintiffs and their children. Upon information and belief, Linn initiated and directed the investigation, conducted interviews, gathered and selectively reported evidence, and authored and submitted the reports, findings, and recommendations that formed the basis of the CINA petition and related court proceedings. Linn further prepared and presented allegations to supervisory personnel and the court, including statements that were materially false, misleading, and/or made with reckless disregard for the truth, while omitting exculpatory information known to her. In doing so, Linn was the central decision-maker whose actions directly caused the initiation and continuation of proceedings that resulted in the deprivation of Plaintiffs' parental and constitutional rights.

15. Defendant Kristen Hahn is a Cecil County Department of Social Services Child Protective Services Supervisor who, upon information and belief, personally reviewed, approved, and authorized the investigative actions, reports, and findings of Defendant Linn throughout the relevant period, including approval of the allegations and recommendations forming the basis of the CINA petition concerning S. Keegan. Defendant Hahn further participated in the initiation and continuation of the CINA proceedings by authorizing filings and ratifying investigative

4

conclusions despite the absence of corroborating evidence and the presence of exculpatory information. In doing so, Hahn directly contributed to the submission of materially false or misleading information to the court and to the deprivation of Plaintiffs' parental and constitutional rights.

16. Defendant Jennifer Hokuf is a forensic nurse examiner who performed examinations relevant to Plaintiffs' children and, upon information and belief, coordinated with CPS and prosecutorial personnel in the use of those examinations to advance false allegations against Plaintiffs. Although Jennifer Hokuf is a registered nurse who was a SANE-A certified FNE who worked at Cristiana Care Union Hospital in Elkton and was contracted by the CAC to do the FNE exams which she started doing in March 2023 for the CAC, which is when N.'s exam was conducted on March 7, 2023, this was done at a non-SAFE certified facility. During trial testimony she testified to being the first nurse FNE contracted at the CAC, although there were physicians prior thereto. According to MCASA (Maryland Coalition Against Sexual Assault) only Cristiana Care Union Hospital is SAFE certified to perform these FNE exams. The CAC is not listed as a SAFE certified location.

17. Defendant Christiana Care Union Hospital, Elkton, Maryland, on information and belief, is a SAFE-certified facility to conduct FNE exams. However, they contracted Jennifer Hokuf to the CAC to conduct such exams off-site at the CAC, a non-SAFE certified facility for FNE exams.

18. Defendant Cecil County Child Advocacy Center ("CAC") is an entity and/or program that hosted forensic interviews and examinations and, upon information and belief, operated in coordination with the State's Attorney's Office with Gavin Patashnik, CCSO, and Cecil DSS in matters involving Plaintiffs.

19. Defendant David Gentry is an adult individual residing in Maryland and/or Pennsylvania, is the former spouse of Shannon Marie Keegan, and is the father of minors N. Gentry and S. Gentry.

20. Defendant Danielle Gentry is an adult individual residing in Maryland and/or Pennsylvania who, upon information and belief, participated in, encouraged, and repeated the accusations and reports described herein.

21. Defendants John/Jane Does 1–10 are additional persons whose identities are presently unknown but who participated in the conduct alleged herein, including investigators, supervisors, and decision-makers. Plaintiffs will amend this Complaint to identify such Defendants as discovery permits.

## JURISDICTION

22. This Court has subject-matter jurisdiction over this civil action pursuant to 42 U.S.C. section 1983 and related provisions and supplemental jurisdiction over state common law claims.

## NOTICE AND CONDITIONS PRECEDENT

23. Plaintiffs served written tort claim notices on or about January 20, 2025 pursuant to the Maryland Tort Claims Act and the Local Government Tort Claims Act, describing the underlying events, injuries, and damages.

24. The notices provided were delivered by U.S. mail, return receipt, signature required.

25. Plaintiffs have satisfied all conditions precedent to filing this action or, alternatively, to the extent any condition precedent is deemed unsatisfied as to any claim, Plaintiffs allege good cause and lack of prejudice and request that the Court permit the action to proceed.

**STATEMENT OF FACTS**

26. The following facts are alleged based on Plaintiffs' personal knowledge, the records of the underlying criminal and juvenile proceedings, and, where expressly stated, information and belief.

**A. Background and Custody Litigation**

27. Mrs. Keegan was previously married to David Gentry. The marriage ended in divorce on September 26, 2018, and a custody arrangement was established regarding the parties' minor children N. and S..

28. Mr. and Mrs. Keegan have a minor child together, S. Keegan.

29. On January 12, 2023, a custody modification proceeding was opened in the Circuit Court by Shannon Keegan seeking sole custody of the minor children shared with Mr. Gentry. On the same date, Mr. Gentry contacted CCSO requesting a welfare check regarding the children at the Keegan residence.

30. Plaintiffs allege that, beginning in January 2023, false allegations, protective orders, CPS reports, and criminal accusations were used to gain leverage in the custody dispute and to interfere with Plaintiffs' family relationships and liberty.

**B. January 12–23, 2023: Early Coordination and the Initiation of Joint CPS–Law Enforcement Activity**

31. Upon information and belief, Defendant Detective Carson White documented contact with Defendant Michaela Linn on or about January 12, 2023 indicating he was assigned to a joint investigation with Ms. Linn regarding physical abuse allegations of N. and S. made by Mr. Gentry against Plaintiffs.

32. Plaintiffs allege this contact predates the first report of alleged sexual abuse to Cecil DSS (January 23, 2023) and reflects a predetermined investigative posture against Plaintiffs before any formal complaint requiring investigation existed, including, notes that indicate Mr. Gentry asked the social worker if the "the physical abuse allegations are enough to remove the children" into his care and the social worker told him, "no they are not."

33. Thereafter, on January 16, 2023, Mr. Gentry filed protective orders making allegations that were false and inflammatory, and an emergency hearing occurred in the District Court which was ultimately thereafter dismissed by Mr. Gentry once he obtained custody of the children, thereby preventing sworn testimony in open court.

34. On January 23, 2023, Mr. Gentry contacted Cecil DSS and reported allegations of sexual abuse regarding N. and S., alleging that Mr. Keegan entered the shower while the children were showering and touched them inappropriately.

35. The Cecil DSS matter was assigned to Defendant Linn. Plaintiffs allege Defendant Linn became the principal DSS worker driving the allegations, generating reports, coordinating with CCSO, and pursuing indicated findings against Plaintiffs.

36. Plaintiffs allege Defendant Linn improperly involved Mr. Gentry in the investigation and colluded with him on multiple occasions to assist him with protective-order proceedings, custody litigation, and the criminal case.

**C. February 2023: Protective Orders, Interviews, and Report Manipulation**

37. In February 2023, additional protective orders were filed and served, and Plaintiffs allege that the timing and content of the filings were coordinated with CPS reporting and law enforcement actions.

8

38. On or about February 14, 2023, Mrs. Keegan participated in a recorded interview attended by Defendant O'Donnell, Defendant White, and Defendant Linn.

39. Plaintiffs allege Defendants failed to fairly investigate or follow up on witness information, explanations, and exculpatory evidence offered during and after that interview, including failing to respond to emails and communications containing evidence and witness leads.

40. On February 23, 2023, a protective order hearing was postponed. Plaintiffs allege the postponement resulted from a letter or communication authored or facilitated by Defendant Linn containing false allegations intended to influence the court process and delay adjudication.

41. Plaintiffs allege that throughout this period Defendant Linn falsified events, altered dates, and generated written materials that misrepresented what was known, when it was known, and what investigative steps were taken.

**D. March 7, 2023: Forensic Nurse Examination and Exculpatory Findings**

42. A forensic nurse examination referral was made for N. Gentry.

43. On March 7, 2023, N. underwent a forensic nurse examination. The medical results were normal across all categories and did not substantiate any allegations of sexual abuse.

44. Defendant O'Donnell had access to, knowledge and/or possession of, the normal results of N.'s medical examination and nevertheless advanced charging decisions against Mr. Keegan without probable cause.

45. Plaintiffs further allege Defendants used the existence of an exam process to insinuate wrongdoing while disregarding that the objective findings did not support the accusations.

**E. March 8–9, 2023: Arrest Warrant and First Arrest of Mr. Keegan**

46. On March 8, 2023, Plaintiffs were informed that an arrest warrant had been issued for Mr. Keegan based on allegations of sexual abuse and rape.

47. On March 9, 2023, Mr. Keegan surrendered himself to CCSO and was arrested on multiple serious charges, including charges that were facially spurious and unsupported.

48. Plaintiffs allege that at the time of Mr. Keegan's surrender and arrest, Defendant O'Donnell and Defendant Linn had not interviewed key witnesses, had not visited Plaintiffs' home, and had not pursued investigative leads offered by Plaintiffs.

49. Plaintiffs allege Mr. Keegan was arrested without meeting or being interviewed by Defendant O'Donnell or Defendant Linn beforehand.

50. After arrest, Mr. Keegan was transported to the Cecil County Detention Center and held without bail. Plaintiffs allege the no-bail posture was urged without a credible evidentiary basis and was punitive and coercive.

**F. Conditions of Confinement and Harm During the First Detention**

51. During Mr. Keegan's first pretrial detention (approximately March 9 through July 11, 2023), Plaintiffs allege he was placed on suicide watch and subjected to solitary confinement conditions despite not being suicidal and objecting to the solitary confinement conditions.

52. Plaintiffs allege Mr. Keegan was stripped, deprived of adequate bedding and clothing, provided "loaf" meals, subjected to strip searches, and held under conditions designed for punishment rather than pretrial detention.

10

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

53. Plaintiffs allege the false accusations were then publicly disseminated, including publication in local media, resulting in threats, harassment, and severe reputational harm.

54. On July 7, 2023, bail was granted. Plaintiffs allege administrative and prosecutorial delays prevented Mr. Keegan's immediate release after posting bail.

55. On July 11, 2023, Mr. Keegan was released on bail after approximately one hundred twenty-four (124) days of detention and for over four (4) additional days after the Court ordered his release on bail and after his posting of bail which he had done immediately.

**G. March 30–31, 2023: Courtroom Arrest of Mrs. Keegan and Pretrial Restrictions**

56. On March 30, 2023, Mr. Keegan had a bond review hearing in the Circuit Court. Mrs. Keegan attended with S. Keegan, the couple's daughter.

57. Immediately following the bond review, Mrs. Keegan was removed from the courtroom by a State's Attorney's Office investigator under orders, on information and belief, of Gavin Patashnik and arrested on false charges including accessory and neglect.

58. Plaintiffs allege **the investigator threatened that S. would be "taken immediately" by the State if Mrs. Keegan did not immediately secure someone to take the child, and that this threat of having the State take her child and put her into the Foster Care system was used to intimidate and coerce compliance and to seek to destroy her reputation and cause her great emotional and mental trauma and anguish, which it did**.

59. Following Mrs. Keegan's arrest, she was detained and then brought before the court for a remote bail hearing.

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

60. Mrs. Keegan was released on or about March 31, 2023 on Level 3 pretrial supervision, including GPS ankle monitoring, frequent reporting and drug testing, and no-contact directives, which Plaintiffs allege were imposed without a sufficient evidentiary basis.

61. In or about May 2023, at a status hearing, the level of supervision was reduced and the ankle monitor was removed, but Plaintiffs allege burdensome reporting requirements continued, significantly disrupting family life and employment.

**H. Investigative Omissions and Reckless Disregard by CCSO Detectives**

62. Plaintiffs allege Defendant O'Donnell failed to conduct any meaningful investigation, including failing to visit Plaintiffs' home, failing to interview key witnesses, and failing to investigate explanations and evidence Plaintiffs provided.

63. Plaintiffs allege Defendant O'Donnell's police reporting relied heavily on statements supplied by Defendant Linn rather than independent investigation.

64. Plaintiffs allege Defendant White likewise failed to follow up on witness information and evidence provided by Plaintiffs and participated in investigative steps despite early indications of a lack of probable cause.

65. After Mrs. Keegan's March 30, 2023 arrest, CCSO seized her cell phone, obtained a search warrant, and then, upon information and belief, failed to actually conduct the search before returning the phone, evidencing reckless disregard and bad faith.

**I. August 11, 2023: Emergency Shelter Care / CINA Proceeding and Forced Removal from the Home**

66. On August 11, 2023, Cecil DSS initiated emergency shelter care/CINA proceedings concerning S. Keegan, resulting in an emergency hearing.

67. Plaintiffs allege Defendant Linn and Defendant Hahn authored and/or submitted reports to the juvenile court that contained false or misleading assertions, including altered dates and mischaracterized events.

68. Upon information and belief, personnel of Defendant DSS reviewed and approved the CINA petition and/or related filings initiated by Defendant Linn.

69. Upon information and belief, Defendant Hahn had an undisclosed personal connection with Danielle Gentry, creating a conflict of interest that was not disclosed to Plaintiffs or the court.

70. As a result of the emergency hearing, Plaintiffs allege they were pressured into leaving their home for approximately thirty (30) days while S. remained with extended family members.

71. Plaintiffs allege the CINA process was used not as a neutral child-protection mechanism but as an extension of the criminal case strategy, to create leverage, restrict access, and introduce narratives into the court record that could be exploited later, on information and belief, all at the behest and coordination of the authorities at the CAC.

**J. CAC's Direction of Investigative Actions and Control (Upon Information and Belief)**

72. Upon information and belief, the CAC leadership, namely Gavin Patashnick, personally directed CCSO to pursue a search warrant and new charges against Plaintiffs on or about August

13

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

11, 2023, despite a CCSO detective, Detective Joseph LaSpina, stating and urging that there was no probable cause to bring any case whatsoever.

73. On information and belief, rather than obey the law and listen to the sworn officer in charge Det. LaSpina, Gavin Patashnick retaliated against and demanded punishment of Detective LaSpina for refusing to proceed without probable cause, including by directing CCSO command staff **to remove him from the case and initiate internal investigative action against him, and by pressuring CCSO to terminate him**.  On information and belief, Det. LaSpina testified to these matters in open court in the custody hearing after the Plaintiffs were exonerated at criminal trial, but Patashnick never disclosed this exculpatory information under *Brady* or Maryland law, violating his ethical duties.

74. Upon information and belief, Defendant Costa violated his oath of office and implemented these directives by removing Detective LaSpina from the case and directing the preparation of charges and arrest actions despite the lack of probable cause.

75. Upon information and belief, Patashnick exercised de facto control over operations and decision-making at the CAC, including coordination among prosecutors, CCSO, and Cecil DSS, and used CAC processes to advance predetermined outcomes against Plaintiffs, and ordering sworn officers of the law to proceed despite there being no probable cause.

76. Plaintiffs allege this coordination occurred outside transparent safeguards, allowed non-consensual or improper examination practices, and was used to bolster unsupported allegations.

**K. August 11, 2023: Search and Seizure Yielding No Evidence**

77. On or about August 11, 2023, CCSO executed a search and seizure of Plaintiffs' home pursuant to a warrant.

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

78. Plaintiffs allege officers recovered no evidence consistent with what the warrant claimed should have been present, and nevertheless seized property including electronic devices.

79. Plaintiffs allege Defendant Costa and Defendant White were present during the execution and were aware that the warrant produced no supporting evidence.

80. Plaintiffs allege multiple family members contacted CCSO offering interviews and exculpatory evidence and requesting follow-up, but CCSO failed to pursue those leads.

**L. CAC Examinations: Lack of Certification, Lack of Consent, and Misuse of Medical Process**

81. Plaintiffs allege the CAC permitted forensic nurse examinations to be conducted at its facility despite not being certified or authorized to conduct such examinations.

82. Defendant Hokuf, on information and belief an employee of Christiana Care Union Hospital, conducted forensic nurse examinations of N. (female) and S (male). Plaintiffs allege she reported normal findings and no medical evidence consistent with sexual abuse.

83. Plaintiffs allege Defendant Hokuf nevertheless assisted the State in advancing alternate theories of guilt outside the scope of the children's medical exams, statements and testimony.

84. Plaintiffs allege two additional attempted forensic examinations of S. were conducted or attempted without consent, and that Plaintiffs' family members were not permitted to remain present at the CAC while the attempts occurred.

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

85. Plaintiffs allege Defendant Hahn, without a warrant or consent, seized and removed S. from the vehicle of Mr. Keegan's mother at the CAC to facilitate a medical examination, despite an express statement that consent was not given and that S. would not be removed voluntarily.

86. Plaintiffs allege these actions constituted an unlawful and offensive touching and battery, and an abuse of their minor child and the medical process that furthered Defendants' unlawful objectives.

**M. August 14–15, 2023: Second Arrests and No-Bail Detention**

87. On or about August 14–15, 2023, Plaintiffs were arrested again at the Cecil County courthouse in connection with newly advanced allegations and charges.

88. Upon information and belief, Patashnick on behalf of the State of Maryland argued for no bail in Plaintiffs' cases without presenting evidence to establish that no-bail detention was necessary, and did so to punish Plaintiffs and coerce compliance.

89. Plaintiffs allege they were detained and subjected to harsh jail conditions, including solitary confinement and forced suicide watch protocols and remained incarcerated for approximately one hundred sixty-two (162) days until their acquittal on January 24, 2024.

**N. December 2023: Witness Interview and Failure to Investigate**

90. In December 2023, Defendant O'Donnell interviewed a witness, Victoria Hafner, who provided information relevant to the lack of credibility of key reporting parties.

91. Plaintiffs allege CCSO failed to re-interview Mr. Gentry or Danielle Gentry after receiving this information, failed to pursue corroboration, and failed to correct investigative reports.

**O. January 17–24, 2024: Trial, Acquittal, and Suppression of Exculpatory Information**

92. Plaintiffs' criminal cases proceeded to a jury trial held from January 17 through January 24, 2024.

93. On January 24, 2024, Plaintiffs were acquitted of all criminal charges by a jury of their peers.

94. Upon information and belief, before and/or during trial Gavin Patashnick became aware of additional allegations involving other adults, including Mrs. Keegan's mother and brother, which undermined the State's theory and demonstrated that the key "informants" had provided false information.

95. Plaintiffs allege Patashnick nonetheless sought and obtained suppression of this material information in the criminal proceedings, refusing to allow it to be presented to the jury even while its exculpatory value was significant, prolonging Plaintiffs' prosecution and incarceration and depriving them of fundamental fairness and due process.

**P. Dismissal of the CINA Petition, Custody Restoration, and Overturning of DSS Findings**

96. Cecil DSS dismissed the CINA petition on October 24, 2023 (Case No. C-07-JV-23-000074).

97. On March 27, 2024, a consent order was entered returning legal and physical custody of S. Keegan to Plaintiffs.

98. On November 7, 2024, Cecil DSS voluntarily overturned all indicated findings against Plaintiffs relating to the allegations that formed the basis of the criminal prosecution.

**Q. Actual Malice and Gross Negligence**

99. Plaintiffs allege Defendants acted with actual malice, including ill will, improper motive, and conscious or reckless disregard for Plaintiffs' rights, such as directing charges without probable

17

cause, altering investigative records, suppressing exculpatory information, and using detention and CINA proceedings as leverage and for purposes of intimidation.

100. Plaintiffs further allege Defendants acted with gross negligence, including wanton or reckless disregard for the safety and rights of Plaintiffs and their children.

101. Plaintiffs allege these facts defeat public official immunity and other immunity defenses under federal and Maryland law.

**R. Damages and Continuing Harm**

102. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered loss of liberty, emotional distress, humiliation, reputational damage, loss of employment and income, loss of family integrity, and substantial legal expenses, and continue to suffer ongoing harm.

**CAUSES OF ACTION**

**COUNT I**
**42 U.S.C. SECTION 1983 & Article 26 (Md. Decl. of Rights)**
**FOURTH AMENDMENT VIOLATION, UNREASONABLE SEARCH AND SEIZURE**
**FALSE ARREST AND UNLAWFUL DETENTION**

103. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

104. At all relevant times, Defendants Costa, O'Donnell, White, Linn, Hahn, and John/Jane Does 1-10 acted under color of state law.

105. These Defendants caused Plaintiffs to be subjected to unreasonable searches and seizures, including procurement and execution of search warrants without probable cause, arrest warrants

and arrests without probable cause, seizure of property without lawful justification, and detention unsupported by a constitutionally sufficient basis.

106. These actions violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and are actionable under 42 U.S.C. section 1983 and under Article 26 of the Maryland Declaration of Rights of the Maryland Constitution.

107. As a direct and proximate result, Plaintiffs suffered damages including loss of liberty, emotional distress, reputational injury, and economic losses.

## COUNT II
### 42 U.S.C. SECTION 1983 & Article 24 (Md. Decl. of Rights)
### FOURTEENTH AMENDMENT DUE PROCESS
### FABRICATION, OMISSION, AND CONCEALMENT OF EXCULPATORY FACTS

108. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

109. Defendants Linn, Hahn, Costa, O'Donnell, White, and John/Jane Does 1-10 deliberately or recklessly fabricated, altered, misstated, or omitted material facts, ignored or concealed exculpatory information, and advanced allegations known to be unsupported or materially misleading.

110. Such conduct was a substantial factor in causing Plaintiffs' arrests, pretrial detention, prosecution, juvenile-court intervention, and deprivation of liberty.

111. These actions deprived Plaintiffs of liberty without due process of law in violation of the Fourteenth Amendment and are actionable under 42 U.S.C. section 1983 and under Article 24 of the Maryland Declaration of Rights of the Maryland Constitution.

112. As a direct and proximate result, Plaintiffs suffered the damages described above.

19

## COUNT III
### 42 U.S.C. SECTION 1983 & Article 24 (Md. Decl. of Rights)
### FOURTEENTH AMENDMENT
### DEPRIVATION OF FAMILY INTEGRITY AND FAMILIAL ASSOCIATION

113. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

114. Defendants Linn, Hahn, White, Costa, O'Donnell and John/Jane Does 1-10, acting under color of state law, intentionally or recklessly interfered with Plaintiffs' parent-child relationships and family integrity by initiating and maintaining juvenile-court intervention, restricting family contact, causing removal of children from Plaintiffs' day-to-day custody, and forcing Plaintiffs from their home without a constitutionally adequate basis. Defendants' conduct independently violates Article 24 of the Maryland Declaration of Rights, which protects individuals from deprivation of liberty without due process of law and is construed in pari materia with, but may provide broader protections than, the Fourteenth Amendment.

115. The interference with Plaintiffs' familial association and custody interests was arbitrary, oppressive, and unsupported by a fair investigation or reliable evidence. Defendants, individually and in concert, deprived Plaintiffs of their fundamental parental rights through conduct that was arbitrary, conscience-shocking, and not narrowly tailored to serve any compelling governmental interest, including but not limited to:

- Initiating and pursuing a child protective investigation and CINA proceedings without sufficient factual basis;
- Fabricating, misrepresenting, and/or omitting material facts in reports, affidavits, and court submissions;
- Advancing allegations they knew to be false or acted with reckless disregard for their truth;
- Continuing proceedings despite the absence of credible evidence of abuse or neglect; and
- Using the authority of the State to interfere with Plaintiffs' custody and family integrity for improper purposes.

20

Such conduct constitutes a violation of Plaintiffs' substantive due process rights under the Fourteenth Amendment and Article 24.

Defendants further deprived Plaintiffs of procedural due process by:

- Failing to provide fair, accurate, and truthful information to the court;
- Denying Plaintiffs a meaningful opportunity to be heard based on truthful evidence;
- Relying on tainted, incomplete, or fabricated evidence in initiating and maintaining proceedings; and
- Utilizing investigative and reporting processes that were fundamentally unfair and constitutionally deficient.

These actions deprived Plaintiffs of liberty interests without due process of law.

116. These actions violated not only Plaintiffs' substantive and procedural due-process rights, but also their fundamental liberty interest as parents under the Fourteenth Amendment and Maryland Constitutional law and are actionable under 42 U.S.C. section 1983 and under Article 24 of the Maryland Declaration of Rights of the Maryland Constitution. This right is among "the oldest of the fundamental liberty interests recognized by the courts." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Maryland courts likewise recognize that "the rights of parents to raise their children without undue interference by the State are fundamental." *Boswell v. Boswell*, 352 Md. 204, 218–19 (1998); *McDermott v. Dougherty*, 385 Md. 320, 353 (2005).

117. As a direct and proximate result, Plaintiffs suffered damages including emotional distress, loss of companionship, disruption of family relations, and economic losses.

**COUNT IV**
**FALSE ARREST AND FALSE IMPRISONMENT**
**(COMMON LAW)**

118. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

21

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

119. Defendants who instigated, directed, or caused Plaintiffs' arrests and detention, including the officer Defendants and the Gentry Defendants to the extent they knowingly procured or caused the arrests, caused Plaintiffs to be arrested and confined without probable cause and without lawful justification.

120. Plaintiffs were detained against their will and suffered loss of liberty and related damages as a result.

121. Defendants acted with actual malice and/or gross negligence, defeating any claim of public-official immunity to the extent such immunity is asserted.

## COUNT V
## MALICIOUS PROSECUTION/ABUSE OF PROCESS

122. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

123. Defendants instituted, continued, or procured criminal proceedings against Plaintiffs.

124. Defendants used criminal process, protective-order process, juvenile-court process, and related court proceedings for purposes other than those for which they were designed, including to pressure Plaintiffs, to influence custody proceedings, and to advance predetermined outcomes.

125. Defendants committed overt acts after process issued in furtherance of improper purposes, causing Plaintiffs substantial harm, including arrest, detention, seizure of property, restriction of liberty, and disruption of family relations.

126. The proceedings were instituted or continued without probable cause and with malice or improper purpose, including to obtain leverage in custody or juvenile matters, to pressure Plaintiffs, and to punish them despite the absence of reliable evidence.

127. The criminal proceedings terminated in Plaintiffs' favor by acquittal on January 24, 2024.

128. Plaintiffs suffered damages including loss of liberty, emotional distress, reputational harm, attorneys' fees and legal expenses, and economic losses.

## COUNT VI
## NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

129. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

130. The supervisory and entity Defendants, including the State of Maryland, Maryland Department of Human Services, Cecil County Department of Social Services, Cecil County Sheriff's Office, Christiana Care Union Hospital and the Child Advocacy Center, failed to reasonably hire, train, supervise, monitor, and discipline personnel involved in child-abuse investigations, warrant applications, forensic examinations, and charging-related investigations.

131. These failures allowed foreseeable violations of Plaintiffs' rights and directly contributed to the harms described herein.

132. Plaintiffs are entitled to compensatory damages and such other relief as the Court deems just.

## COUNT VII
## BATTERY
## (NONCONSENSUAL FORENSIC EXAMINATION / OFFENSIVE TOUCHING)

133. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

134. Defendants Hahn, Hokuf, Christiana Care Union Hospital, the Child Advocacy Center, and others acting in concert caused or attempted nonconsensual forensic medical examinations of S.A.

23

Docusign Envelope ID: 6C25F972-939A-8B1F-83A0-75855559AD35

Keegan, including removal of the child for examination despite express non-consent from the custodial family member present.

135. Such conduct constituted an unlawful and offensive touching and caused Plaintiffs and their child injury, emotional distress, and damages.

136. Plaintiffs are entitled to compensatory damages and such other relief as the Court deems just.

## COUNT VIII
## DEFAMATION
### (AGAINST DAVID GENTRY AND DANIELLE GENTRY)

137. Plaintiffs incorporate by reference all foregoing allegations as if fully set forth herein.

138. David Gentry and Danielle Gentry published and republished statements accusing Plaintiffs of rape, sexual abuse, neglect, and other crimes to law-enforcement officers, DSS personnel, medical or Child Advocacy Center personnel, court personnel, and other third parties.

139. These statements were false and were made with knowledge of falsity or reckless disregard for the truth.

140. The statements caused substantial reputational injury, humiliation, emotional distress, economic harm, and other damages to Plaintiffs.

## DAMAGES

141. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer damages including loss of liberty; emotional distress and mental anguish; humiliation; reputational injury; loss of income and employment opportunities; out-of-pocket expenses; substantial attorneys' fees and legal expenses incurred to defend criminal and juvenile proceedings;

disruption of family relationships and loss of companionship; and other consequential damages to be proven at trial.

142. Plaintiffs further allege that the actions of David Gentry and Danielle Gentry were undertaken intentionally, maliciously, and with reckless disregard for the truth and directly contributed to the wrongful investigation, arrests, prosecution, and family separation described herein.

143. Plaintiffs seek compensatory damages in an amount to be proven at trial and, to the extent permitted by Maryland law and federal law and supported by proof of actual malice, punitive damages against individual Defendants.

144. Plaintiffs further seek reasonable attorneys' fees and costs to the extent permitted by 42 U.S.C. section 1988 and other applicable law.

## PRAYER FOR RELIEF

145. WHEREFORE, Plaintiffs Shannon Keegan and John Keegan respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally to the extent permitted by law, and award compensatory damages in an amount to be determined at trial, not less than $100,000,000, subject to any applicable statutory limitations or caps.

146. Plaintiffs further request punitive damages against individual Defendants where permitted by law and supported by proof.

147. Plaintiffs request reasonable attorneys' fees and costs where permitted by federal or state law, together with pre-judgment and post-judgment interest and such other and further relief as the Court deems just and proper.

## JURY DEMAND

148. Plaintiffs demand trial by jury on all issues so triable.

25

**28 U.S. CODE § 1746 - UNSWORN DECLARATIONS UNDER PENALTY OF PERJURY**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __3/30/2026_____, 2026.

Signed by:

Shannon Marie Keegan

Signed by:

John David Keegan

Respectfully submitted,

_____/s/_____

By: Daniel L. Cox, Fed. Bar 28245
THE COX LAW CENTER, LLC
P.O. Box 545
Emmitsburg, MD 21727
P: 410-254-7000
Fax: (410) 254-7220
dcox@coxlawcenter.com
*Attorneys for Plaintiff*