**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SHANNON MARIE KEEGAN, et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-26-1264** |
| **MICHAELA LINN, et al.,** | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * * * *

## MEMORANDUM

Plaintiffs Shannon Marie Keegan and John David Keegan, individually and as next friends of their three minor children (S. Keegan, N. Gentry, and S. Gentry), filed suit against various entities and individuals: the State of Maryland and the Maryland Department of Human Services ("MDHS"); the Cecil County Department of Social Services ("CCDSS") and two of its employees, Michaela Linn and Kristen Hahn; the Cecil County Sheriff's Office ("CCSO") and three of its officers, Lt. Joseph Costa, Det. Michael O'Donnell, and Det. Carson White; Christiana Care Union Hospital and a nurse employed there, Jennifer Hokuf; the Cecil County Child Advocacy Center ("CAC"); David and Danielle Gentry; and John/Jane Doe Defendants.

The Defendants have filed six Motions to Dismiss: Det. White (ECF No. 14); David and Danielle Gentry (ECF No. 25); CCSO and Lt. Costa (ECF No. 30); Det. O'Donnell (ECF No. 31); the State of Maryland, MDHS, CCDSS, Linn, and Hahn (ECF No. 33);[1] and Christiana Care Union Hospital and Hokuf (ECF No. 39). The Motions are fully briefed and no hearing is required.

[1] CAC did not file a Motion to Dismiss, but the Motion to Dismiss filed by the State of Maryland and related entities argues that CAC is not amenable to suit under Maryland law.

For the reasons set forth below, four of the Motions to Dismiss (ECF Nos. 14, 30, 31 and 39) will be granted in their entirety. The Motions to Dismiss filed by David and Danielle Gentry (ECF No. 25) and by the State of Maryland, CCDSS, MDHS, Hahn, and Linn (ECF No. 33) will be granted in part and denied in part. The only claims that will survive are Count V (Malicious Prosecution/Abuse of Process) against David Gentry and Count VII (Battery) against Hahn.

## *I. Factual Background*

The Keegans bring this action, which arises out of a custody dispute between Shannon Keegan and David Gentry regarding their two minor children, N. and S. Gentry. (*See generally* ECF No. 1.) In short, the Keegans "allege that, beginning in January 2023, false allegations, protective orders, CPS reports, and criminal accusations were used to gain leverage in the custody dispute and to interfere with [the Keegan's] family relationships and liberty." (*Id.* ¶ 30.)

Shannon Keegan was previously married to David Gentry "and a custody arrangement was established regarding [their] minor children N. and S. [Gentry.]" (*Id.* ¶ 27.) Shannon Keegan and John Keegan also have a child, S. Keegan. (*Id.* ¶ 28.) On January 12, 2023, Shannon Keegan opened a custody modification proceeding, seeking sole custody of N. and S. Gentry. (*Id.* ¶ 29.) That day, David Gentry contacted CCSO and requested a welfare check of the children. (*Id.*)

The Keegans allege that Det. White (Detective, CCSO) contacted Linn (Child Protective Services Assessor, CCDSS) on January 12, 2023, "indicating he was assigned to a joint investigation with Ms. Linn regarding physical abuse allegations of N. and S. made by Mr. Gentry against Plaintiffs." (*Id.* ¶ 31.) The Keegans allege that:

> [T]his contact predates the first report of alleged sexual abuse to Cecil DSS (January 23, 2023) and reflects a predetermined investigative posture against Plaintiffs before any formal complaint requiring investigation existed, including, notes that indicate Mr. Gentry asked the social worker if the "the physical abuse allegations are enough to remove the children" into his care and the social worker told him, "no they are not."

(*Id.* ¶ 32.) David Gentry filed protective orders on January 16, 2023, "making allegations that

were false and inflammatory." (*Id.* ¶ 33.) "[A]n emergency hearing occurred in the District Court which was ultimately thereafter dismissed by Mr. Gentry once he obtained custody of the children, thereby preventing sworn testimony in open court." (*Id.*) Further, on January 23, 2023, David Gentry reported allegations of sexual abuse of N. and S. to CCDSS, "alleging that Mr. Keegan entered the shower while the children were showering and touched them inappropriately." (*Id.* ¶ 34.) The CCDSS investigation was assigned to Linn, and the Keegans allege that Linn "improperly involved Mr. Gentry in the investigation and colluded with him on multiple occasions to assist him with protective-order proceedings, custody litigation, and the criminal case." (*Id.* ¶¶ 35–36.)

In February 2023, "additional protective orders were filed and served, and Plaintiffs allege that the timing and content of the filings were coordinated with CPS reporting and law enforcement actions." (*Id.* ¶ 37.) On February 14, 2023, Shannon Keegan was interviewed by Det. O'Donnell, Det. White, and Linn, after which the Keegans "allege Defendants failed to fairly investigate or follow up on witness information, explanations, and exculpatory evidence offered during and after that interview, including failing to respond to emails and communications containing evidence and witness leads." (*Id.* ¶ 39.) "On February 23, 2023, a protective order hearing was postponed. Plaintiffs allege the postponement resulted from a letter or communication authored or facilitated by Defendant Linn containing false allegations intended to influence the court process and delay adjudication." (*Id.* ¶ 40.) Plaintiffs also allege that Linn falsified evidence. (*Id.* ¶ 41.)

On March 7, 2023, N. underwent a forensic nurse examination, which "did not substantiate any allegations of sexual abuse." (*Id.* ¶¶ 42–43.) Despite having knowledge of this result, Det. O'Donnell "advanced charging decisions against Mr. Keegan without probable cause." (*Id.* ¶ 44.)

On March 8, 2023, the Keegans were informed of the issuance of an arrest warrant for John Keegan based upon allegations of sexual abuse and rape, and he surrendered himself to CCSO on March 9, 2023. (*Id.* ¶¶ 46–47.) The Keegans allege that he was arrested despite not having been

interviewed by Det. O'Donnell or Linn and despite the fact that Det. O'Donnell and Linn had not conducted certain investigative procedures, such as interviewing key witnesses, visiting the Keegan's home, or pursuing certain leads. (*Id.* ¶¶ 48–49.) The Keegans allege that John Keegan was detained from March 9, 2023 through July 11, 2023 under harsh conditions of confinement. (*Id.* ¶¶ 51–52.) He was granted bail on July 11, after "administrative and prosecutorial delays prevented [his] immediate release after posting bail." (*Id.* ¶ 54.)

Shannon and S. Keegan attended a bond review hearing for John Keegan on March 30, 2023. (*Id.* ¶ 56.) Shannon Keegan "was removed from the courtroom by [an] . . . investigator under orders . . . of Gavin Patashnick[2] and arrested on false charges including accessory and neglect." (*Id.* ¶ 57.) After a bail hearing, Shannon Keegan was released, but the Keegans allege that she was subjected to inappropriately restrictive release conditions. (*Id.* ¶ 59–61.)

The Keegans allege that Det. O'Donnell "failed to conduct any meaningful investigation" and that his reporting "relied heavily on statements supplied by Defendant Linn rather than independent investigation." (*Id.* ¶¶ 62–63.) The Keegans also allege that Det. White "failed to follow up on witness information and evidence provided by Plaintiffs and participated in investigative steps despite early indications of a lack of probable cause." (*Id.* ¶ 64.)

On August 11, 2023, CCDSS initiated "emergency shelter care/CINA proceedings concerning S. Keegan." (*Id.* ¶ 66.) This resulted in an emergency hearing at which the Keegans were "pressured into leaving their home for approximately thirty (30) days while S. remained with extended family members." (*Id.* ¶ 66, 70.) The Keegans allege that Linn and Hahn submitted "false or misleading assertions" to the juvenile court and that "[u]pon information and belief, Defendant Hahn had an undisclosed personal connection with Danielle Gentry, creating a conflict

---

[2] No claims were brought against Patashnick, who appears to have been the prosecutor on the Keegans' case.

of interest that was not disclosed to [the Keegans] or the court." (*Id.* ¶ 69.)

Around that date, "the CAC leadership, namely Gavin Patashnick, personally directed CCSO to pursue a search warrant and new charges against" the Keegans "despite a CCSO detective, Detective Joseph LaSpina, stating and urging that there was no probable cause to bring any case." (*Id.* ¶ 72.) Patashnick "retaliated against and demanded punishment of Detective LaSpina for refusing to proceed without probable cause, including by directing CCSO command staff to remove him from the case and initiate internal investigative action against him, and by pressuring CCSO to terminate him." (*Id.* ¶ 73.) Lt. Costa "implemented these directives by removing Detective LaSpina from the case and directing the preparation of charges and arrest actions despite the lack of probable cause." (*Id.* ¶ 74.)

Also on August 11, 2023, CCSO searched the Keegans' home pursuant to a warrant. (*Id.* ¶ 77.) The Keegans allege that "officers recovered no evidence consistent with what the warrant claimed should have been present, and nevertheless seized property including electronic devices." (*Id.* ¶ 78.) They further allege that "Defendant Costa and Defendant White were present during the execution and were aware that the warrant produced no supporting evidence." (*Id.* ¶ 79.) The Keegans aver that family members attempted to contact CCSO to offer exculpatory evidence, but CCSO "failed to pursue those leads." (*Id.* ¶ 80.)

The Keegans allege that "CAC permitted forensic nurse examinations to be conducted at its facility despite not being certified or authorized to conduct such examinations." (*Id.* ¶ 81.) They also allege that Hokuf conducted a forensic examination of both N. and S. and reported "normal findings and no medical evidence consistent with sexual abuse." (*Id.* ¶ 82.) Hokuf "nevertheless assisted the State in advancing alternate theories of guilt outside the scope of the children's medical exams, statements and testimony." (*Id.* ¶ 83.) Further:

> [T]wo additional attempted forensic examinations of S. were conducted or attempted without consent, and . . . [the Keegans'] family members were not

permitted to remain present at the CAC while the attempts occurred.

> . . . Defendant Hahn, without a warrant or consent, seized and removed S. from the vehicle of Mr. Keegan's mother at the CAC to facilitate a medical examination, despite an express statement that consent was not given and that S. would not be removed voluntarily.

(*Id.* ¶ 85.)

On August 14 or 15, 2023, the Keegans were arrested again. (*Id.* ¶ 87.) They allege that Patashnick "argued for no bail in [the Keegans'] cases without presenting evidence to establish that no-bail detention was necessary, and did so to punish [them] and coerce compliance." (*Id.* ¶ 88.) The Keegans allege that they were subjected to "harsh jail conditions." (*Id.* ¶ 89.)

In December 2023, Det. O'Donnell interviewed Victoria Hafner, "who provided information relevant to the lack of credibility of key reporting parties." (*Id.* ¶ 90.) However, "CCSO failed to re-interview Mr. Gentry or Danielle Gentry after receiving this information, failed to pursue corroboration, and failed to correct investigative reports." (*Id.* ¶ 91.)

The Keegans' criminal cases proceeded to a jury trial in January 2024, and they were acquitted. (*Id.* ¶¶ 92–93.) On October 24, 2023 (prior to the trial), CCDSS dismissed the CINA petition. (*Id.* ¶ 96.) On March 27, 2024, "a consent order was entered returning legal and physical custody of S. Keegan to [the Keegans]." (*Id.* ¶ 97.) And "[o]n November 7, 2024, [CCDSS] voluntarily overturned all indicated findings against [the Keegans] relating to the allegations that formed the basis of the criminal prosecution." (*Id.* ¶ 98.)

On the basis of these allegations, the Keegans bring eight claims, titled as follows:

> Count I: 42 U.S.C. § 1983 & Article 26 (Md. Decl. of Rights) Fourth Amendment Violation, Unreasonable Search and Seizure, False Arrest, and Unlawful Detention (brought against Lt. Costa, Det. O'Donnell, Det. White, Linn, and Hahn);
>
> Count II: 42 U.S.C. § 1983 & Article 24 (Md. Decl. of Rights) Fourteenth Amendment Due Process Fabrication, Omission, and Concealment of Exculpatory Facts (brought against Lt. Costa, Det. O'Donnell, Det. White, Linn, and Hahn);
>
> Count III: 42 U.S.C. § 1983 & Article 24 (Md. Decl. of Rights) Fourteenth Amendment

Deprivation of Family Integrity and Familial Association (brought against Lt. Costa, Det. O'Donnell, Det. White, Linn, and Hahn);

Count IV: False Arrest and False Imprisonment (brought against the "officer Defendants"[3] and the Gentry Defendants);

Count V: Malicious Prosecution/Abuse of Process (brought against all Defendants);[4]

Count VI: Negligent Hiring, Training, Supervision, and Retention (brought against the State of Maryland, MDHS, CCDSS, CCSO, Christiana Care Union Hospital, and CAC);

Count VII: Battery (Nonconsensual Forensic Examination / Offensive Touching) (brought against Hahn, Hokuf, Christiana Care Union Hospital, and CAC); and

Count VIII: Defamation (brought against David Gentry and Danielle Gentry).

## *II. Legal Standard*

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S.

[3] The Court presumes the reference to "officer Defendants" refers to the three CCSO officers: Lt. Costa, Det. O'Donnell, and Det. White.

[4] The Keegans do not specify particular Defendants in this count, so the Court presumes it was brought against all Defendants.

at 555, 557).

## *III. Analysis*

The Keegans' Complaint is largely fatally deficient because it fails to include any factual enhancement that would render the allegations plausible. For the reasons that follow, only Count V as to David Gentry and Count VII as to Hahn will survive. All other claims will be dismissed.

### A. David and Danielle Gentry's Motion to Dismiss

The Court first turns to the Motion to Dismiss filed by David and Danielle Gentry. (ECF No. 25.) The claims against them are Count IV: False Arrest and False Imprisonment; Count V: Malicious Prosecution/Abuse of Process; and Count VIII: Defamation.[5] For the reasons that follow, the claims against Danielle Gentry will all be dismissed, and Counts IV and VIII will be dismissed against David Gentry. The only claim that will survive as to David Gentry is Count V for Malicious Prosecution/Abuse of Process.

#### 1. Claims Against Danielle Gentry (Counts IV, V, and VIII)

The claims against Danielle Gentry will be dismissed. The Keegans fail to make any substantive allegations against her. They allege only that she, "upon information and belief, participated in, encouraged, and repeated the accusations and reports described herein" (ECF No. 1 ¶ 20) and that "Defendant Hahn had an undisclosed personal connection with Danielle Gentry, creating a conflict of interest that was not disclosed to Plaintiffs or the court" (*id.* ¶ 69). Without more, the Keegans do not plausibly state any claims against her. Thus, the Court examines the three claims against David Gentry.

[5] The parties make various arguments regarding David and Danielle Gentry's liability for the § 1983 claims. The Court will not address those arguments, as those claims explicitly reference only Lt. Costa, Det. O'Donnell, Det. White, Linn, Hahn, and John/Jane Doe Defendants.

**2. False Arrest and False Imprisonment Claims (Count IV)**

"The elements of false arrest and false imprisonment are identical. Those elements are: 1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000).

The tort of false arrest "contemplates that the defendant, through threats or actions, must create a present restraint of liberty." *Green v. Brooks*, 725 A.2d 596, 607 (Md. Ct. Spec. App. 1999) (quotation marks and citation omitted). Thus, courts have concluded that "only the arresting officer may be liable for false arrest." *Humbert v. O'Malley*, Civ. No. WDQ-11-0440, 2014 WL 1266673, at *15 (D. Md. Mar. 25, 2014); *see also Sesay v. Woolsey*, Civ. No. 18-01924-PWG, 2019 WL 859782, at *5 (D. Md. Feb. 21, 2019) (dismissing a false arrest claim where the defendant "did not arrest" the plaintiff, although the defendant's "efforts to secure an arrest warrant may well have precipitated [the plaintiff's] arrest"). The Keegans do not allege that David Gentry restrained their liberty.[6] The false arrest claim will be dismissed as to David Gentry.

Further, with respect to false imprisonment:

> [W]hile a third party who wrongfully instigates another's *warrantless* arrest may be liable for false imprisonment, the false imprisonment tort does not lie against either the instigator or the arresting officer where the plaintiff is not detained by the instigator and is arrested by a police officer pursuant to a facially valid warrant. Rather, to the extent that the instigator acts maliciously to secure the warrant for the plaintiff's arrest, the plaintiff's cause of action against the instigator is malicious prosecution.

*Montgomery Ward v. Wilson*, 664 A.2d 916, 927 (Md. 1995) (emphasis in original). The Keegans do not allege that the arrests were warrantless, or that they were made pursuant to facially deficient

---

[6] Further, any false arrest claim associated with John Keegan's March 9, 2023, false arrest claim is time-barred. *See Cofield v. City of Baltimore*, Civ. No. GLR-14-3976, 2015 WL 4040605, at *4 (D. Md. June 30, 2015) (three-year statute of limitations).

warrants.[7] (*See* ECF No. 1 ¶ 46 (alleging that John Keegan's March 9, 2023 arrest was made pursuant to a warrant); *id.* ¶ 57 (not specifying whether Shannon Keegan's March 30, 2023 arrest was made pursuant to a warrant, but alleging that it was made on charges of accessory and neglect); *id.* ¶ 87 (not specifying whether the Keegans' August 14-15, 2023 arrests were made pursuant to a warrant, but alleging that they were made with respect to new charges).) The Keegans argue that the Court must construe the facts in the light most favorable to them and make reasonable inferences in their favor. This is true. However, assuming that these arrests were warrantless would require the Court to manufacture facts, not to construe facts in the Keegans' favor.

Thus, the false arrest and false imprisonment claim will be dismissed against David Gentry.

### 3. Malicious Prosecution/Abuse of Process (Count V)

The elements of malicious prosecution under Maryland law are:

> (1) that a criminal proceeding was instituted or continued by the defendant against the plaintiff, (2) that the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause for the proceeding, and (4) malice, meaning that a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice.

*DiPino v. Davis*, 729 A.2d 354, 373 (Md. 1999). With respect to the first element, "[w]here a party instigates, aides or assist[s] in a criminal prosecution he/she may be liable even where he/she did not swear out a warrant." *Smithfield Packing Co. v. Evely*, 905 A.2d 845, 854 (Md. Ct. Spec. App. 2006). Further, "[a] person may also be liable if he/she has instituted, instigated or inspired in any fashion a criminal proceeding against the plaintiff within the contemplation of the law of torts." *Id.* (internal quotation marks, alterations, and citation omitted).

[7] To be sure, the Keegans assert throughout the Complaint that the charges against them were false and that there was no probable cause to arrest them, but this is different from alleging a *facially* deficient warrant. *See Dett v. State*, 869 A.2d 420, 428 (Md. Ct. Spec. App. 2005), *aff'd*, 891 A.2d 1113 (Md. 2006) ("An arrest warrant that is facially valid provides legal authority to arrest and detain the person who is the subject of the warrant.").

> If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable.

*Wood v. Palmer Ford, Inc.*, 425 A.2d 671, 677 (Md. Ct. Spec. App. 1981) (citation and quotation marks omitted).

At this stage of the litigation, the Keegans have sufficiently alleged a malicious prosecution claim against David Gentry. The Keegans allege that he contacted CCSO requesting a welfare check of the children, made physical abuse allegations, and reported to CCDSS that John Keegan entered the shower and touched the children inappropriately. The Complaint sufficiently alleges that these reports led to an investigation which ultimately resulted in criminal charges against the Keegans, and thus sufficiently alleges that David Gentry "inspired in any fashion a criminal proceeding." *See Smithfield Packing*, 905 A.2d at 854.

David Gentry argues that the Complaint does not sufficiently allege malicious prosecution because he did nothing other than "merely state[] what he believe[d], [and left] the decision to prosecute entirely to the uncontrolled discretion of the officer." (ECF No. 25-1 at 15 (quoting *Wood*, 425 A.2d at 677).) That ignores the allegations in the Complaint that he "knowingly or recklessly made and repeated false accusations, used protective-order and custody-related processes for improper purposes." (ECF No. 1 ¶ 4.) Whether David Gentry merely stated what he believed or made false accusations is a factual dispute, inappropriate for a motion to dismiss.

The Court takes David Gentry's point that there were several intervening steps between his reports and criminal charges being filed, but dismissal of the malicious prosecution claim is not warranted at this stage. *Cf. Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014) ("[W]hile intervening acts of other participants in the criminal justice system, such as an exercise of

prosecutorial discretion or the return of an indictment, generally insulate a police officer from liability, officers may be liable to a wrongfully indicted defendant when they have, e.g., lied to or misled the prosecutor" (internal quotation marks and citations omitted).)

Further, David Gentry does not address the abuse of process claim alleged in Count V of the Complaint.

> To state a cause of action for abuse of process . . . , a party must allege facts sufficient to satisfy three elements: first, that the defendant wil[l]fully used process, such as a subpoena or a protective order, after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process.

*Charles v. Charles*, 336 A.3d 728, 739 (Md. App. Ct. 2025) (quotation marks and citation omitted). "[T]he 'gist' of an abuse of process claim is not in the initiation or even the finalization of the underlying legal action, but rather in 'misusing[ ] or misapplying process justified in itself for an end other than that which it was designed to accomplish.'" *Id.* (quoting *Metro Media Ent., LLC v. Steinruck*, 912 F. Supp. 2d 344, 350 (2012)). Because David Gentry has not addressed this claim, the Court will not dismiss it. Further, the Complaint contains sufficient allegations that, if true, plausibly allege this claim against him.

The malicious prosecution and abuse of process claim will survive as to David Gentry.

**4. Defamation Claim (Count VIII)**

The defamation claim will be dismissed, as it was filed beyond the statute of limitations. The statute of limitations for such a claim is one year, *see Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009), any potentially defamatory statement was made in 2023 or 2024, and this action was filed in 2026. The Keegans argue that the Complaint plausibly alleges "ongoing publications even at this moment against the Keegans." (ECF No. 26 at 12–13.) That is not true; the Complaint contains no such allegations.

For the foregoing reasons, all claims will be dismissed against Danielle Gentry, and the only claim that will survive as to David Gentry is Count V.

**B. CCSO and the CCSO Officers' Motions to Dismiss[8]**

The Court next turns to the Motions to Dismiss filed by CCSO and the three CCSO officers, Lt. Costa, Det. O'Donnell, and Det. White. (ECF Nos. 14, 30, 31.)

The claims against CCSO will be dismissed, as "under Maryland law, a sheriff's office is not a legal entity subject to suit." *Jones v. Baltimore City Sheriff's Dep't*, Civ. No. MJM-24-720, 2025 WL 958567, at *2 (D. Md. Mar. 31, 2025) (collecting cases).

The Keegans brought the following five claims against the three CCSO officers: Count I: 42 U.S.C. § 1983 & Article 26 (Md. Decl. of Rights) Fourth Amendment Violation, Unreasonable Search and Seizure, False Arrest, and Unlawful Detention; Count II: 42 U.S.C. § 1983 & Article 24 (Md. Decl. of Rights) Fourteenth Amendment Due Process Fabrication, Omission, and Concealment of Exculpatory Facts; Count III: 42 U.S.C. § 1983 & Article 24 (Md. Decl. of Rights) Fourteenth Amendment Deprivation of Family Integrity and Familial Association; Count IV: False Arrest and False Imprisonment; and Count V: Malicious Prosecution/Abuse of Process. For the reasons set forth below, the claims against the three officers will be dismissed.[9]

Broadly speaking, the Complaint alleges a defective investigation process conducted in part by CCSO officers and that there was a "predetermined investigative posture" against the Keegans. (*See* ECF No. 1 ¶ 32.) However, the allegations against the three CCSO officers are

---

[8] Lt. Costa and Det. O'Donnell ask the Court to convert their Motions into ones for summary judgment and to consider materials outside of the pleadings. (ECF Nos. 30, 31.) Det. O'Donnell attaches, for example, applications for statement of charges for the Keegans, which reflects that N. and S. Gentry were interviewed and made sexual assault allegations against the Keegans. (*See* ECF No. 31-2 at 9, ECF No. 31-3 at 16.) The Court concludes that this request is premature, given the lack of discovery that has occurred in this case. The Court will resolve the Motions pursuant to Rule 12(b)(6).

[9] Because the Court finds that the claims against these Defendants must be dismissed on the bases set forth below, the Court does not address all arguments raised by these Defendants.

devoid of the factual enhancement that might render them plausible. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557).)

For example, the Keegans allege that the officers, "failed to fairly investigate or follow up on witness information, explanations, and exculpatory evidence offered during and after that interview, including failing to respond to emails and communications containing evidence and witness leads." (ECF No. 1 ¶ 39.) But the Keegans fail to allege what specific information the Defendants failed to follow up on or what exculpatory evidence they ignored. Other examples include the Keegans' allegation that "Defendant White . . . failed to follow up on witness information and evidence provided by Plaintiffs and participated in investigative steps despite early indications of a lack of probable cause" (*id.* ¶ 64) and that "Defendant O'Donnell interviewed a witness, Victoria Hafner, who provided information relevant to the lack of credibility of key reporting parties." (*Id.* ¶ 90.) The Complaint is filled with similar allegations that lack any factual detail. This is insufficient to state a claim. *See Nero v. Mosby*, 890 F.3d 106, 120 (4th Cir. 2018) ("The Officers claimed that the State's Attorney's Office 'manipulated evidence to facilitate [the] indictments,' that 'Mosby created false facts and omitted material facts,' and that she 'conduct[ed] a bogus and sham investigation[.]' But, absent specific supporting facts, these conclusory allegations are 'not entitled to be assumed true.'" (citing *Iqbal*, 556 U.S. at 681).)[10]

[10] In Opposition, the Keegans refer to facts not in the Complaint. For instance, they state that they "told [Det. O'Donnell] that David and Danielle Gentry were the ones harming the children, by coaching them to level false allegations as a means to gain custody." (ECF No. 36 at 15–16.) That allegation appears nowhere in the Complaint. Plaintiffs also reference a "DSS-documented history of false reporting" (*id.* at 15) which likewise appears nowhere in the Complaint.

Further, the Keegans allege a lack of probable cause, but this is a legal conclusion. Without additional factual allegations relating to the allegedly deficient probable cause, those allegations lack plausibility. Indeed, a "mere allegation that the arrest warrant was issued 'without probable cause' is too conclusory to pass muster under Rule 12(b)(6)." *Antonio v. Moore*, 174 F. App'x 131, 137 (4th Cir. 2006) (also explaining that "[b]y repeatedly asserting that the warrant was issued 'without probable cause,' without offering any factual allegations underlying this legal conclusion, [plaintiff] failed to meet the requirements of Rule 8(a) or 12(b)(6)"); *see also Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 496 (M.D.N.C. 2011) ("Plaintiffs have not alleged facts supporting their underlying assertions that probable cause was lacking—a legal conclusion" and "Plaintiffs nowhere indicate in what way probable cause was lacking." (citations omitted).) Conspicuously absent from the Complaint are *any factual allegations whatsoever* surrounding the probable cause (sufficient or not) that undergirded the Keegans' arrests and the search warrant. That Plaintiffs were ultimately acquitted does not permit the Court to assume that probable cause was lacking. *See Fox*, 807 F. Supp. 2d at 497 ("The acquittal . . . as to one charge and the dismissal of the remaining charges against both Plaintiffs . . . do not plausibly imply that their original indictment and arrest were unsupported by probable cause.").

**1. Section 1983 Claims (Counts I–III)**

Given the foregoing, all of Plaintiffs' § 1983 and analogous state law claims (Count I–III) fail against the officers. The Complaint fails to sufficiently allege that the underlying probable cause was deficient, and this is fatal to the Keegans' Fourth Amendment claim (Count I). *See Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996) ("The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable."). The Keegans' arguments to the contrary are unavailing. For instance, they argue that, pursuant to *Franks v. Delaware*, 438 U.S.

154 (1978), an officer violates the Fourth Amendment when he deliberately or recklessly includes material false statements in a warrant affidavit or omits material information necessary to a fair probable-cause determination. However, the Complaint is devoid of any plausible allegations that the officers deliberately or recklessly included false statements in a warrant affidavit. Further, without any allegations concerning the allegedly deficient probable cause, the Court cannot assess whether any allegedly false or missing information was material.

The Complaint fails to sufficiently allege what evidence the officers failed to investigate or ignored, how that evidence was material, or that the officers acted in bad faith. This is fatal to the Fourteenth Amendment claim (Count II). *See Harris v. Town of S. Pines*, 110 F.4th 633, 645 (4th Cir. 2024) ("To succeed on a Fourteenth Amendment fabrication of evidence claim, a plaintiff must show," *inter alia*, that "that officers fabricated or omitted material evidence."); *see also Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 396–97 (4th Cir. 2014) ("To make out a claim that the Officers violated his constitutional rights by suppressing exculpatory evidence, [plaintiff] must allege . . . that (1) the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued."). The Keegans argue, for example, that "[t]he Fourth Circuit recognizes that an investigating officer's fabrication of evidence can violate due process," but they do not plausibly allege that any officer fabricated evidence.

The Complaint also fails to allege deprivation of family integrity and familial association in violation of the Fourteenth Amendment (Count III). The Keegans describe this as a deprivation of their procedural and substantive due process rights. However, they have not plausibly alleged any "constitutionally inadequate" procedures. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) ("To succeed on a procedural due process claim, a plaintiff must," *inter alia*, "prove that the procedures employed were constitutionally inadequate." (quotation marks and citation omitted)). The Keegans likewise fail to allege any deprivation that was "arbitrary in the

constitutional sense." *Callahan v. N. Carolina Dep't of Pub. Safety*, 18 F.4th 142, 145 (4th Cir. 2021) ("[A] plaintiff asserting a § 1983 substantive due process claim must allege both the deprivation of his life, liberty or property interest by a state actor, and that the deprivation of this interest was arbitrary in the constitutional sense." (quotation marks and citation omitted).)

The Keegans appear to be alleging—at most—a "negligent investigation" type claim. And "[t]o the extent [they are] alleging a claim for negligence or negligent investigation under § 1983 against Defendants, [they] fail[] to state a claim on which relief can be granted. Negligence, in general, is not actionable under § 1983." *Price v. Clinton Police Dep't*, Civ. No. 17-3207-BHH-JDA, 2018 WL 1320234, at *3 (D.S.C. Feb. 9, 2018), *report and recommendation adopted*, Civ. No. 17-3207-BHH, 2018 WL 1124515 (D.S.C. Mar. 1, 2018) (collecting cases). Further, "an officer is not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established" and "[a]n investigation need not be perfect." *Miller v. Prince George's Cnty.*, 475 F.3d 621, 630–31 (4th Cir. 2007) (explaining that officers cannot "intentionally lie" or "recklessly include or exclude material information").

Finally, the officers are entitled to immunity as to all claims brought against them. "Qualified immunity bars § 1983 actions against government officials in their individual capacities unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428–29 (4th Cir. 2020) (quotation marks and citations omitted). In this context, "clearly established" "means that, at the time of the official's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* at 429 (quotation marks, alterations, and citation omitted). In this way:

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. It gives government officials breathing room to make reasonable but

> mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.

*Id.* at 428–29 (quotation marks and citations omitted).

The officers are protected by qualified immunity based on the facts as alleged. First, as discussed above, the Keegans have not sufficiently alleged that they violated any federal rights to begin with. Second, it necessarily follows that the Keegans have not sufficiently alleged that any unlawfulness was "clearly established."

The § 1983 claims will be dismissed against the three officers.

**2. State Law Claims (Counts IV and V)**

The Keegans also fail to state a false arrest/false imprisonment claim (Count IV) or a malicious prosecution/abuse of process claim (Count V) against the officers. None of the officers are alleged to have arrested the Keegans, and—as discussed above in Section III.A.2.—there is no plausible allegation that the arrests were warrantless. Further, as discussed in Section III.A.3., malicious prosecution requires a plausible allegation of malice, and abuse of process requires a willful use of process in a manner not contemplated by law to satisfy an ulterior motive. The Keegans fail to plausibly allege such facts as to the three officers.

Even if the Keegans had plausibly stated these claims, the officers are entitled to immunity on the facts as alleged. The Maryland Tort Claims Act ("MTCA") provides that "State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . ." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). For purposes of the MTCA, malice is "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Nero*, 890 F.3d at 127 (quoting *Barbre v. Pope*, 935 A.2d 699, 714 (Md. 2007)). Gross negligence, on the other hand, is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property

of another." *Id.* (quoting *Cooper v. Rodriguez*, 118 A.3d 829, 845 (Md. 2015)). Further, "[g]ross negligence is not just big negligence." *Stracke v. Est. of Butler*, 214 A.3d 561, 569 (2019) (citation omitted). Rather, it "must be sufficient to establish that the defendant had a wanton or reckless disregard for human life. Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind." *Id.* (citation and alterations omitted).

The Keegans have not sufficiently alleged malice or gross negligence, as they allege these facts in a conclusory fashion. *See Barbre*, 935 A.2d at 717 ("[C]onclusory allegations of gross negligence [are] not enough to bring the claim outside of the immunity and non-liability provisions of the MTCA"); *Francis v. Maryland*, Civ. No. ELH-21-1365, 2024 WL 1156407, at *22 (D. Md. Mar. 18, 2024) ("Even at the motion to dismiss stage, the plaintiff must allege with some clarity and precision those facts which make the act malicious." (quotation marks and citation omitted).)

For the foregoing reasons, all claims against the three CCSO officers will be dismissed.

**C. State Defendants' Motion to Dismiss**

The Court next turns to the Motion to Dismiss filed by the State of Maryland, MDHS, CCDSS, and two CCDSS employees, Linn and Hahn. (ECF No. 33.)[11]

The Keegans bring two claims against the State of Maryland, MDHS, and CCDSS: Count V: Malicious Prosecution/Abuse of Process and Count VI: Negligent Hiring, Training, and Supervision. The Keegans bring the following claims against Linn and Hahn: Count I: 42 U.S.C. § 1983 & Article 26 (Md. Decl. of Rights) Fourth Amendment Violation, Unreasonable Search and Seizure, False Arrest, and Unlawful Detention; Count II: 42 U.S.C. § 1983 & Article 24 (Md. Decl. of Rights) Fourteenth Amendment Due Process Fabrication, Omission, and Concealment of

[11] The Keegans also bring claims against CAC, but that is an entity not capable of being sued under Maryland law. (ECF No. 33-1 at 9 n.2.) The Keegans do not dispute that CAC cannot be sued. The claims against CAC will be dismissed.

Exculpatory Facts; Count III: 42 U.S.C. § 1983 & Article 24 (Md. Decl. of Rights) Fourteenth Amendment Deprivation of Family Integrity and Familial Association;[12] and Count V: Malicious Prosecution/Abuse of Process. The Keegans also bring Count VII: Battery against Hahn.[13]

The claims against these Defendants largely suffer from the same fatal deficiencies that plague the allegations concerning the three CCSO officers: the Keegans fail to allege sufficient facts to render their allegations plausible. The claims against these Defendants will all be dismissed, with the exception of Count VII against Hahn.[14]

### 1. Section 1983 Claims Against Linn and Hahn (Counts I–III)

Linn and Hahn argue that, as child welfare workers, they are entitled to qualified immunity with respect to the § 1983 claims. *See Renn By & Through Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir. 1996) ("We have held that social services officials engaged in child abuse investigations may properly assert qualified immunity in appropriate situations." (internal quotation marks and citation omitted).) The § 1983 claims will be dismissed.

As noted above, "[q]ualified immunity bars § 1983 actions against government officials in their individual capacities unless (1) they violated a federal statutory or constitutional right, and

---

[12] The State Defendants argue that the § 1983 claims cannot be brought against any State entities or individuals acting in their official capacity. The Keegans agree, and explain that they do not bring any § 1983 claims against the State of Maryland, MDHS, or CCDSS, or against Linn or Hahn in their official capacities. Thus, the Court examines the § 1983 claims as individual capacity claims against only Linn and Hahn.

[13] With respect to Count IV (malicious prosecution/abuse of process), the Keegans explain that "Defendants who instigated, directed, or caused Plaintiffs' arrests and detention, including the officer Defendants and the Gentry Defendants to the extent they knowingly procured or caused the arrests, caused Plaintiffs to be arrested and confined without probable cause and without lawful justification." (ECF No. 1 ¶ 119.) Thus, the claim is not clearly brought against any Defendants other than the three officers and David and Danielle Gentry. The Court does not address this claim as to any other Defendants.

[14] Because the Court concludes that the claims against these Defendants must largely be dismissed for the bases set forth below, it does not address all arguments raised by these Defendants.

(2) the unlawfulness of their conduct was clearly established at the time." *Barrett,* 975 F.3d at 428–29 (internal quotation marks and citations omitted).

The Keegans' claims fail at the first step. The allegations against Linn and Hahn do not establish any constitutional violations. Like those against the CCSO officers, the allegations against Linn and Hahn do not contain any factual enhancement. For instance, the Keegans allege that "Defendant Linn and Defendant Hahn authored and/or submitted reports to the juvenile court that contained false or misleading assertions, including altered dates and mischaracterized events" (ECF No. 1 ¶ 67) but do not provide any detail whatsoever about the allegedly fabricated or misleading information. They allege that "Defendant Hahn had an undisclosed personal connection with Danielle Gentry, creating a conflict of interest that was not disclosed to Plaintiffs or the court" (*id.* ¶ 69) but do not explain the nature or impact of any such conflict. Thus, on the facts as alleged, the Keegans have not plausibly alleged that Linn or Hahn caused any constitutional violations at all. The claims must be dismissed on this basis alone.

With respect to the Fourth Amendment claim, Linn and Hahn also argue, *inter alia,* that it must be dismissed because the Keegans have not sufficiently alleged a lack of probable cause. As discussed in more detail above in Section III.B.1., the Court agrees. The Keegans make only conclusory allegations on this score, insufficient to state a claim.

With respect to the Fourteenth Amendment claims, Linn and Hahn also assert that they enjoy prosecutorial immunity for allegations surrounding the initiation of child welfare proceedings. On the facts as alleged, the Court agrees. The Fourth Circuit has granted "absolute immunity . . . to those activities of social workers that could be deemed prosecutorial." *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 137–38 (4th Cir. 1989) (explaining that such immunity extends to a social worker's filing of a removal petition but not to their conduct in investigating removal).

The § 1983 and analogous state claims (Counts I–III) will be dismissed against Linn and Hahn.

**2. Malicious Prosecution/Abuse of Process Claim against the State Defendants (Count V)**

The Keegans also fail to state a malicious prosecution/abuse of process claim against the State Defendants. As discussed above, malicious prosecution requires a plausible allegation of malice, and abuse of process requires a willful use of process in a manner not contemplated by law to satisfy an ulterior motive. The Keegans fail to plausibly allege such facts against these Defendants, given the threadbare allegations against them.

Even if the Keegans had plausibly stated these state law claims, Linn and Hahn would be entitled to immunity, similar to the CCSO officers.

**3. Battery Claim against Hahn (Count VII)**

Turning to the battery claim against Hahn, that claim is based upon the Keegans' allegation that "Defendant Hahn, without a warrant or consent, seized and removed S. from the vehicle of Mr. Keegan's mother at the CAC to facilitate a medical examination, despite an express statement that consent was not given and that S. would not be removed voluntarily." (ECF No. 1 ¶ 85.)

Under Maryland law, "a battery occurs when one intends a harmful or offensive contact with another without that person's consent . . . . At the pleading stage, a plaintiff must allege instances of nonconsensual contact that were harmful or offensive." *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 169 (D. Md. 2023) (citations and quotation marks omitted).

Hahn argues that the this claim must be dismissed because the contact was legally justified. In support of that argument, she cites a Maryland regulation, which provides that a "local department caseworker . . . may take a child who may have been abused or neglected to a medical facility for examination and treatment without parental or legal guardian consent or court order." COMAR 07.02.11.08(D). However, that regulation also provides that "[t]he local department

shall: (1) Give notice to the child's parents or legal guardian before, and encourage participation in and attendance at, any planned evaluative, diagnostic, or inpatient medical care; and (2) Promptly notify the parents or legal guardian of any treatment given without prior notice unless the notification violates the privacy rights of the child." COMAR 07.02.11.08(E).

At this stage, on the facts alleged, the Court cannot conclude that Hahn has met her burden with respect to the dismissal of the battery claim. That claim will not be dismissed.

**4. Negligent Hiring, Training, and Supervision Claim against the State of Maryland, MDHS, and CCDSS (Count VI)**

The Keegans bring a negligent hiring, training, supervision, and retention claim against the State of Maryland, MDHS, and CCDSS. That claim fails.

> To state a claim for negligent hiring, training, or supervision, a plaintiff must show: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, training, or supervising the employee as the approximate cause of plaintiff's injuries . . . . In doing so, a plaintiff cannot rely on little more than conclusory allegations and generalizations.

*Francis v. Maryland*, Civ. No. ELH-21-1365, 2023 WL 2456553, at *35 (D. Md. Mar. 10, 2023) (quotation marks, citations, and alterations omitted). As the foregoing discussion makes clear, the Keegans have largely failed to allege any "incompetence" or "act or omission causing . . . injuries" on the part of Linn and Hahn, and thus fail to state a claim for negligent hiring, training, supervision, and retention. Although the Court will not dismiss the battery claim against Hahn, the Keegans do not sufficiently allege her employer's "actual or constructive knowledge" of any facts relating to the alleged battery or any facts that would allow the Court to infer any negligence on her employer's part in hiring her. This claim will be dismissed as to the State of Maryland, MDHS, and CCDSS.

**D. Christiana Care Union Hospital and Jennifer Hokuf's Motion to Dismiss**

Finally, the Court turns to the Motion to Dismiss filed by Christiana Care Union Hospital and Jennifer Hokuf. (ECF No. 39.) The Keegans bring Count V: Malicious Prosecution/Abuse of Process against both of these Defendants, Count VI: Negligent Hiring, Training, and Supervision against the Hospital, and Count VII: Battery against Hokuf.[15] For the reasons that follow, the claims against these Defendants will be dismissed.

As is relevant to this Motion to Dismiss, the Complaint alleges that:

> Defendant Jennifer Hokuf is a forensic nurse examiner who performed examinations relevant to Plaintiffs' children and, upon information and belief, coordinated with CPS and prosecutorial personnel in the use of those examinations to advance false allegations against Plaintiffs. Although Jennifer Hokuf is a registered nurse who was a SANE-A certified FNE who worked at Cristiana [sic] Care Union Hospital in Elkton and was contracted by the CAC to do the FNE exams which she started doing in March 2023 for the CAC, which is when N.'s exam was conducted on March 7, 2023, this was done at a non-SAFE certified facility. During trial testimony she testified to being the first nurse FNE contracted at the CAC, although there were physicians prior thereto. According to MCASA (Maryland Coalition Against Sexual Assault) only Cristiana [sic] Care Union Hospital is SAFE certified to perform these FNE exams. The CAC is not listed as a SAFE certified location.
>
> Defendant Christiana Care Union Hospital, Elkton, Maryland, on information and belief, is a SAFE-certified facility to conduct FNE exams. However, they contracted Jennifer Hokuf to the CAC to conduct such exams off-site at the CAC, a non-SAFE certified facility for FNE exams.

(ECF No. 1 ¶¶ 16, 17.) The Keegans also allege that, upon examining N. and S., Hokuf "reported normal findings and no medical evidence consistent with sexual abuse" but "nevertheless assisted the State in advancing alternate theories of guilt outside the scope of the children's medical exams, statements and testimony." (*Id.* ¶ 83.) The Keegans also make allegations about additional

[15] These Defendants also make arguments with respect to the false arrest/false imprisonment claim, but the Keegans did not name them in that count. The Court therefore does not address those arguments. Further, because the Court concludes that these claims must be dismissed for the reasons discussed herein, the Court does not address all arguments raised by these Defendants.

unconsented-to forensic examinations of S., but do not allege that Hokuf conducted those examinations. (*Id.* ¶¶ 84–86.)

These allegations fall far short of stating claims for malicious prosecution, abuse of process, failure to supervise, or battery. The allegation that Hokuf did not find evidence of sexual abuse but nonetheless "assisted the State in advancing alternate theories of guilt" is completely devoid of factual enhancement, rendering it implausible. Further, the allegations of additional unconsented-to forensic examinations do not reference Hokuf or the Hospital. (*See* ECF No. 1 ¶¶ 84–85 (alleging "two additional attempted forensic examinations of S.," without reference to who conducted those examinations, and alleging that "Hahn, without a warrant or consent, seized and removed S. from the vehicle").) And, given these sparse allegations against Hokuf, the negligent hiring, training, supervision, and retention claim against Christiana Care Union Hospital fails.

Thus, all claims against Hokuf and Christiana Care Union Hospital will be dismissed.

## *IV. Conclusion*

As detailed above, the Complaint largely fails to comply with the federal pleading standards. Of the eight causes of action brought against fourteen Defendants, only two claims survive: the malicious prosecution/abuse of process claim (Count V) against David Gentry and the battery claim (Count VII) against Hahn.

The Keegans note in opposition to the various motions to dismiss that the Court should grant them leave to amend their Complaint. However, "requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend." *Livingstone v. Walden Univ., LLC*, Civ. No. 22-3096-BAH, 2023 WL 8806616, at *5–6 (D. Md. Dec. 20, 2023). The Court forewarns the Keegans that it will not permit any amended complaint that seeks to assert any factually unsupported claims or that is of the same scattershot nature as the Complaint currently before the Court.

A separate Order follows.

DATED this 20 day of October, 2026.

BY THE COURT:

James K. Bredar
United States District Judge